IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, CHIEF JUDGE

Civil Case No. 05-cv-01119-LTB

JANE Y. BOREN-WALL,

     Plaintiff,

v.

JO ANNE B. BARNHART, Commissioner of Social Security,

     Defendant.

_____

# ORDER

_____

     Plaintiff, Jane Y. Boren-Wall, appeals from the Social Security Administration ("SSA")

Commissioner's final decision denying her application for supplemental security income, filed

pursuant to 42 U.S.C. §§ 1381-1383c.  Jurisdiction is proper under 42 U.S.C. § 405(g).  Oral

argument would not materially assist in the determination of this appeal.  After consideration of

the parties' briefs, as well as the administrative record, and for the reasons set forth below, I

AFFIRM the SSA Commissioner's final order.

## I. STATEMENT OF THE CASE

     Plaintiff seeks judicial review of the Commissioner's decision denying her application for

supplemental security income filed on September 27, 2002.  [Administrative Record ("AR") 35]

Her application was initially denied on May 14, 2003.  [AR 28]  On Plaintiff's request, an

Administrative Law Judge (ALJ) conducted an evidentiary hearing on June 23, 2004.  [AR 20,

33, 236]

The ALJ subsequently issued a written ruling on October 22, 2004, denying Plaintiff's application on the basis that she was not disabled in that she retained the residual functional capacity (RFC) to perform her past relevant work (Step Four), and that she was also capable of performing other jobs which exist in significant numbers in the national economy (Step Five). [AR 16]  On April 19, 2005,  the SSA Appeals Council denied Plaintiff's request for review of the ALJ's determination, making the SSA Commissioner's denial final for the purpose of judicial review.  [AR 4]  *See* 20 C.F.R. § 416.1481.  Plaintiff timely filed her complaint with this court on June 16, 2005, in which she seeks review of the Commissioner's decision.

## II. FACTS

Plaintiff was 46 years old on the date of the ALJ's decision and she has her G.E.D.  [AR 13, 36, 47, 238, 249]  Plaintiff alleged that she became disabled and could not work due to the following conditions:  "cannot focus, lose vision, sleepy, extremely emotional, angry, crying, destructive, screaming [sic]."  [AR  41 ]

The medical records indicate that on April 12, 2002, Plaintiff went to the emergency room after drinking alcohol and ingesting methamphetamines and marijuana.  She was transferred to a detoxification facility.  [AR 170]  Plaintiff went to the emergency room again on August 29, 2002, where she was assessed with depression, suicidal ideation and history of bipolar disorder.  [AR 89]  She reported recent ampethamine and THC use.  [AR 90, 113] Plaintiff  was prescribed psychotropic medication and was referred to the Southwest Mental Health Center.  [AR 90-98]

On September 10, 2002, Plaintiff  presented to the Mancos Valley Clinic in

"considerable distress" and seeking a prescription refill.   [AR 103]   She presented to the

emergency room again on September 16, 2002, complaining of headaches and light sensitively.

[AR 152]   MRI results were normal for her age. [AR 114]

In a follow-up visit to the Mancos Valley Clinic on October 25, 2002, Plaintiff saw Tracy

Lippard, M.D, who assessed Plaintiff with bipolar disorder with poor control since she had

stopped taking her medications. [AR 102]   On November 14, 2002, Plaintiff reported anxiety

attacks, joint pain, and sensitivity to touch to Dr. Lippard.   [AR 100]

At this time Plaintiff began to receive counseling at the Southwest Colorado Mental

Health Center.   [AR 118-21]   On November 11, 2002, Lori Loschert, M.D., performed a

psychiatric evaluation.   [AR 122]   Plaintiff reported a history of mental problems and an

addiction to marijuana.   [AR 123]   A mental status examination indicated that Plaintiff was

cooperative, appeared to have borderline intellectual functioning, and exhibited constricted affect

and depressed mood.   [AR 123]   Dr. Loschert diagnosed:   bipolar disorder, currently depressed;

cannabis dependence; and stimulant dependence in remission. [AR 124]   She determined

Plaintiff's Global Assessment Function (GAF) at 55.   [AR 124]   Pursuant to the *Diagnostic and*

*Statistical Manual of Mental Disorders-IV* (4th Ed. 1994)(DSM-IV), a GAF of 51-60 is

indicative of moderate symptoms (e.g. flat affect and circumstantial speech, occasional panic

attacks) or moderate difficulty in social, occupational or school function (e.g. few friends,

conflicts with peers or co-workers).   In a follow up visit on December 19, 2002, Dr. Loschert's

assessment of Plaintiff was bipolar, depression, and cannibus dependence.   [AR 116]   Dr.

Loschert notes relapse on cannibus and methamphetamine on February 6, 2003, and again on May

3

1, 2003.  [AR 116, 115]

A State Disability Determination Services  medical consultant, Ellen Ryan, M.D., reviewed Plaintiff's medical records and opined, on May 14, 2003, that Plaintiff had a medically determinable impairment of "bipolar order, depressed" and a substance abuse addition/affective disorder of polysubstance abuse.  [AR 125, 132, 137]   Dr. Ryan reported that Plaintiff was moderately limited in the following functions:  restriction of activities of daily living; difficulties in maintaining social functioning; and difficulties in maintaining concentration, persistence or pace. [AR 139]  Dr. Ryan also indicated one or two episodes of decompensation, each of an extended duration.  [AR 139]  Dr. Ryan found that Plaintiff was moderately limited in some aspects of her understanding and memory; her sustained concentration and persistence; her social interaction; and her ability to adapt.  [AR 125-26]   Dr. Ryan further opined that "[s]he can follow simple instructions, sustain an ordinary routine, [and] make simple decisions.  Supervision OK, less interaction with coworkers and public (to reduce stress)."  [AR 127]

On April 14, 2003, police officers brought Plaintiff to the emergency room where the assessment was acute depression and methamphetamine abuse.  [AR 143]   A year later, on April 19, 2004, Plaintiff returned to the emergency room, where the impression was an adverse drug reaction; chest pain that had resolved; dypsnea; and anxiety disorder.  [AR 198, 201]  On September 15, 2004, she again presented to the emergency room where she was given medication for anxiety.  [AR 195]  At that time she was assessed with a GAF of 70.  [AR 188]  Pursuant to the DSM-IV, a GAF of 70 is indicative of some mild symptoms (e.g. depressed mood and mild insomnia) or some difficulty in social, occupational or school function (e.g. occasional truancy, or

theft within the household), but generally functioning pretty well, has some meaningful

interpersonal relationships.   On October 27, 2004, she was again treated in the emergency room,

where the impression was acute anxiety, bipolar disorder and situational stress.  [AR 219, 224]

At the hearing on June 23, 2004, Plaintiff testified that she is unable to work because her

highly emotional state results in "a hard time dealing with the slightest bit of stress."  [AR 240]

Plaintiff  discussed how her extreme emotions limited her ability to work and engage in life

activities.  [AR 240-249]

Plaintiff subsequently provided a written statement to the SSA Appeals Council in which

she further articulated how her anxiety affects her ability to function.  She also explained that her

past drug use was a way to self-medicate her bipolar disorder and that she was no longer using

drugs.  [AR 231-233]   In addition, Plaintiff provided the SSA Appeals Council several letters

written in support of her claim for  supplemental security income.  A family advocate working

with Plaintiff  wrote a letter on December 17, 2004, in which she indicated that Plaintiff's bipolar

disorder has always been "severe" and that it is "very, very difficult for her to function on a day to

day basis."  She suggested that Plaintiff's drug use might have been to "self-medicate."   The case

manger concluded that, in her opinion, Plaintiff "should receive financial help from the Social

Security Administration."  [AR 227]  Another family advocate at the same project wrote a latter

dated  June 8, 2004, indicating that she had "witnessed [Plaintiff's] paralyzing emotional and

physical conditions on many occasions during the past 2 years."   [AR 230]  Additionally,

Plaintiff's sister wrote a letter on Plaintiff's behalf noting that she is "in desperate need of

receiving disability payments" based on physical problems and also "emotional problems."  [AR

229]

## III.  LAW

A five-step sequential evaluation process is used to determine whether a claimant is disabled, which is generally defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see also Bowen v. Yuckert,* 482 U.S. 137, 137, 107 S.Ct. 2287, 107 S.Ct. 2287 (1987); *Campbell v. Bowen,* 822 F.2d 1518, 1521 (10th Cir. 1987).

Step One is whether the claimant is presently engaged in substantial gainful activity. If she is, disability benefits are denied.  *See* 20 C.F.R. § 416.920.  Step Two is a determination whether the claimant has a medically severe impairment or combination of impairments as governed by 20 C.F.R. § 416.920(c).  If the claimant is unable to show that her medical impairments would have more than a minimal effect on her ability to do basic work activities, she is not eligible for disability benefits.  Step Three determines whether the impairment is equivalent to one of a number of listed impairments deemed to be so severe as to preclude substantial gainful employment.  *See* 20 C.F.R. § 416.920(d).  Step Four then requires the claimant to show that the impairment(s) and assessed RFC prevents her from performing work that she has performed in the past.  If the claimant is able to perform her previous work, the claimant is not disabled.  *See* 20 C.F.R. § 416.920(e) & (f).

Finally, if the claimant establishes a *prima facie* case of disability based on the four steps

discussed, the analysis proceeds to Step Five where the Secretary has the burden of proving that

the claimant has the RFC to perform other work in the national economy in view of her age,

education and work experience.  20 C.F.R. § 416.920(g).  The claimant is entitled to benefits if

the Secretary cannot establish that he can perform an alternative work activity and that this type

of job exists in the national economy.  The Secretary may rely upon the Medical Vocational

Guidelines (the "grids") to meet this burden.  *Bowen v. Yuckert, supra,* 482 U.S. at 146; *see also*

*Heckler v Campbell,* 461 U.S. 458, 461-462, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983)(the grids

consist of a matrix of four factors – physical ability, age, education, and work experience – and

rules that identify whether jobs requiring specific combinations of these factors exist in significant

numbers in the national economy and, as such, direct a conclusion as to whether work exists that

the claimant could perform).

## IV. SSA's RULING

The ALJ first determined that Plaintiff has not performed any substantial gainful activity

during the relevant period under consideration (Step One).  [AR 13]  The ALJ next found that

Plaintiff had the following severe medically determinable impairments "affective disorder and

substance abuse disorder" (Step Two).  [AR 13]  However, the ALJ found that none of Plaintiff's

impairments, either singly or in combination, met or equaled any impairment found in the Listing

of Impairments which would deem them be so severe for presumptive disability (Step Three).

[AR 13]

As a result, the ALJ went on to determine whether Plaintiff retained the RFC to perform

the requirements of her past relevant work.  When assessing Plaintiff's RFC, the ALJ determined

that Plaintiff had no extertional, postural or environmental limitations caused by physical

impairments.  [AR 16]  However, he further found that she had  "significant non-exertional

limitations which interfere with her ability to work." [AR 16]  After finding that Plaintiff  had

moderate restrictions of activities of daily living; moderate difficulty in maintaining social

functioning; moderate difficulty maintaining concentration, persistence or pace; and has had one

or two episodes of decompensation, the  ALJ concluded that Plaintiff is:

> limited to performing jobs with no complex tasks with a specific vocation
> preparation of 2 or less . . [and] restricted to no dealing with the general public;
> occasional dealing with co-workers; and, minimal supervision.  [AR 16]

Given this RFC assessment, the ALJ concurred with the testimony of the vocational expert

that Plaintiff was able to perform her past relevant work as a car escort driver, motel cleaner, and

house cleaner (Step Four).   [AR 16]   In addition, after considering Plaintiff's assessed RFC and

her vocational profile (age, education and work experience), the ALJ found that "the occupational

base is not eroded and that the claimant is capable of making a successful vocational adjustment

to work that exists in significant numbers in the national economy" (Step Five).  [AR 17]   Thus,

the ALJ concluded that Plaintiff was not disabled at Step Four and, alternatively, at Step Five.

[AR 18]  The SSA Appeals Council subsequently denied Plaintiff's request for review, making the

ALJ's decision final.  [AR 4]   This appeal followed.

V. STANDARD OF REVIEW

This court's limited review here is whether the final decision is supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *White v. Barnhart,* 287 F.3d 903, 905 (10th Cir. 2001); *Qualls v. Apfel,* 206 F.3d 1368, 1371 (10th Cir. 2000). Thus, the function of my review is "to determine whether the findings of fact of the Secretary are based upon substantial evidence and inferences reasonably drawn therefrom; if they are so supported, they are conclusive upon [this] reviewing court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970). "Substantial evidence is more than a scintilla, but less than a preponderance; it is such evidence that a reasonable mind might accept to support the conclusion." *Campbell v. Bowen*, *supra*, 822 F.2d at 1521 (*citing Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d. 842 (1971)). I may not re-weigh the evidence or substitute my judgment for that of the ALJ. *See Casias v. Secretary of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991); *Jozefowicz v. Heckler*, 811 F.2d 1352, 1357 (10th Cir. 1987); *Cagle v. Califano*, 638 F.2d 219, 220 (10th Cir. 1981). I examine the record as a whole, including whatever in the record fairly detracts from the weight of the Secretary's decision and, on that basis, determine if the substantiality of the evidence test has been met. *Casias v. Secretary*, *supra*, 933 F.2d at 800 (*citing Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951)). With regard to the application of the law, reversal may be appropriate when the Commissioner either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards. *See Winfrey v. Chater,* 92 F.3d 1017, 1019 (10th Cir. 1996).

9

VI. ANALYSIS

Credibility

On appeal, Plaintiff first asserts that the ALJ failed adequately to assess her credibility in the context of determining her RFC, which is defined as "the most [a claimant] can still do despite [his or her] limitations."  20 C.F.R. § 416.945(a); SSR 96-8p.  Specifically, Plaintiff  argues that when determining that she was not credible, the ALJ failed to assess all necessary criteria – as set forth in SSR 96-7p – because he did not "fully address claimant's daily activities, the effectiveness of her medications, the severity of her symptoms, or other measures she uses to help relieve her symptoms."

In evaluating credibility, "[b]ased on a consideration of all of the evidence in the case record, the adjudicator may find all, only some, or none of an individual's allegations to be credible."  SSR 96-7p;  *Brown v. Callahan*, 120 F.3d 1133, 1135 -1136 (10th Cir. 1997).  A credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record" and must  be "sufficiently specific" to inform subsequent reviewers of both the weight the ALJ gave to a claimant's statements and the reasons for that weight.  *Hayden v. Barnhart,* 374 F.3d 986, 992 (10th Cir. 2004)(quoting SSR 96-7p).  The ALJ should consider factors such as the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of the claimant's medications; persistent attempts to find relief for pain and her willingness to try prescribed treatment; and whether the claimant has regular contact with a doctor.  *Hamlin v. Barnhart*, 365 F.3d 1208,

1220 (10th Cir. 2004)(*quoting* SSR 96-7p).   In summary, "[f]indings as to credibility should be

closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of

findings."  *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988)(footnote omitted); *see also*

*Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995).

The ALJ here found that Plaintiff's testimony regarding her impairments and their impact

on her ability to work was "not totally credible in light of the degree of medical treatment required

and her medical history."  [AR 15]  The ALJ relied upon the fact that her alleged disability onset

date was June 15, 1982, but "all of her work activity is after that date."  In addition, the ALJ

determined that nothing in the record supports Plaintiff's testimony regarding her sensitivity to

sun.  He further noted that Plaintiff is the primary care giver for her 9-year-old son, and she

testified that "she likes to go to ball games with her son and she likes to go fishing."  Finally, the

ALJ noted that Plaintiff also testified that her medications were working.  Therefore, the ALJ

found that Plaintiff's "allegation of restrictions and limitations not persuasive."  [AR 15]

Plaintiff challenges each of these reasons, and argues specific evidence that weighs against

the ALJ's determinations.  With regard to the ALJ's finding as to the date Plaintiff contends she

became disabled, I note that the record is not clear as to exactly when Plaintiff asserts that she

was no longer able to work. [AR 36, 41, 50, 245]   For example, Plaintiff's handwritten

application indicates that she became unable to work on July 31, 2002, but her signed application

for supplemental security income indicates that her disability began on June 15, 1982.  [AR 41,

36]  The field office disability report states that claimant's alleged onset date was June 15, 2002.

[AR 50]   Nonetheless, it was not improper for the ALJ to rely on Plaintiff's ability to work after

11

she was initially diagnosed with a bipolar disorder in 1982 when assessing the credibility of her

claimed restrictions and limitations.

"Credibility determinations are peculiarly the province of the finder of fact, and we will not

upset such determinations when supported by substantial evidence." *Kepler v. Chater*, *supra*, 68

F.3d at 391. On this record, the ALJ's credibility assessment contains specific reasons for the

findings, which are supported by the record, and are sufficiently specific to inform me of the

reasons for the weight afforded to Plaintiff's testimony. The ALJ's reasons for his findings related

to Plaintiff's credibility are adequately articulated and grounded in the evidence; the ALJ's

determination is not merely a "conclusory statement" as prohibited by SSR 96-7p. *See e.g.*

*Hardman v. Barnhart,* 362 F.3d 676, 679 (10th Cir. 2004)(ruling the ALJ did not properly assess

the claimant's credibility when his order used "boilerplate language" and failed to provide

"specific reasons" for the determination ). Plaintiff has failed to cite to a case in support of her

argument that the ALJ's alleged failure to specifically address each specific factor set forth in SSR

96-7p and 20 C.F.R. § 416.929(c) constitutes reversible error. *See generally Clay v. Apfel*, 64

F.Supp.2d 774, 781 (N.D.Ill. 1999)(SSR 96-7p does not require an ALJ to analyze and elaborate

on each of the seven factors set forth when making a credibility determination); *Thompson v.*

*Sullivan,* 987 F.2d 1482, 1490 (10th Cir. 1993).

Physician's Opinions

Plaintiff next asserts that the ALJ failed properly to analyze the non-examining agency

consultant physician's opinion related to Plaintiff's mental restrictions. In determining Plaintiff's

RFC, the ALJ properly assessed the degree of Plaintiff's functional limitations pursuant to the

"special procedures" set forth in 20 C.F.R. §416.920a.  The ALJ found, with record support, that

Plaintiff had moderate difficulty in the three areas of:  activities of daily living; social functioning;

concentration, persistence or pace.  The ALJ also found that Plaintiff has had one or two episodes

of decompensation.  As a result, he concluded that Plaintiff's RFC was limited to work requiring

no complex tasks with a specific vocational preparation (SVP) of 2 or less, and no dealing with

the general public, only occasional dealing with co-workers, and minimal supervision.  [AR 18]

An SVP of 2 is in the class of unskilled work, *see* SSR 00-4p, which is "work which needs little or

no judgment to do simple duties that can be learned on the job in a short period of time."  20

C.F.R. § 416.968(a);  *see also* SSR 85-15 and POMS DI 25020.010.

　　　　Plaintiff contends that the ALJ erred in failing to address all of the specific limitations

identified by the agency physician, Dr. Ryan.  She refers me to Dr. Ryan's individual findings that

Plaintiff was moderately limited in the ability to:  maintain attention and concentration for

extended periods; complete a normal workday/week without interruptions from psychologically

based symptoms and perform at a consistent pace without an unreasonable number and length of

rest periods; interact appropriately with the general public; maintain socially appropriate behavior

and adhere to basic standards of a neatness and cleanliness; and respond appropriately to changes

in the work setting.  [AR 125-26]   Plaintiff claims that the majority of these limitations are

inconsistent with the ALJ's determination that Plaintiff could perform unskilled work.  I disagree.

　　　　The ALJ's RFC assessment adequately accounts for and takes into consideration

Plaintiff's mental limitations as found by Dr. Ryan.  Contrary to Plaintiff's argument, the ALJ's

13

RFC assessment that Plaintiff has the ability to perform the basic mental demands of unskilled work – with the additional limitations of no dealing with the public, occasional dealing with co-worker, and minimal supervision – is entirely consistent with Dr. Ryan's opinion related to Plaintiff's functional abilities. As a result, I find no error by the ALJ in failing to specifically address each of Dr. Ryan's conclusions, or to set forth the specific weight given to her opinion.

To the extent that Plaintiff also contends that the ALJ failed to give appropriate weight to the opinions of her treating physicians, I agree with Defendant that there is no evidence in the record of a treating medical source expressing an opinion or judgment about the nature and severity of the impairments or resulting limitations. *See* 20 C.F.R. § 416.927.

Vocational Expert

Finally, Plaintiff argues that the hypothetical question posed to the vocational expert failed to accurately set forth her work restrictions. However, the record reveals that the hypothetical question posed to the vocational expert, and relied upon by the ALJ, was complete and consistent with the limitations in the ALJ's RFC assessment. [AR 253] *See generally Hargis v. Sullivan,* 945 F.2d 1482, 1492 (10th Cir.1991)(the law of the Tenth Circuit requires that the hypothetical question posed to the vocational expert include all the impairments and restrictions found credible by the ALJ).

Therefore, because the determinations in the ALJ's order are grounded in substantial evidence in the record, IT IS ORDERED that the Commissioner's decision is AFFIRMED.

Dated: March __7__ , 2006, in Denver, Colorado.

BY THE COURT:

____s/Lewis T. Babcock_____
LEWIS T. BABCOCK, CHIEF JUDGE

15